# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KAOS PRODUCTIONS, INC.,<br>d/b/a Spin Nightclub,<br><br>Plaintiff,<br><br>v.<br><br>SMALL BUSINESS ADMINISTRATION, and<br>ISABELLA CASILLAS GUZMAN,<br>Administrator, Small Business Administration,<br><br>Defendants. | Civil Action No. 21-cv-2324-TNM<br><br>Judge Trevor N. McFadden |

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Kaos Productions, Inc., d/b/a Spin Nightclub ("Spin"), hereby moves for a preliminary injunction directing Defendants to preserve, pending resolution of this action, Shuttered Venue Operators Grant Program funds in the amount of that which Spin requested, is eligible to receive, and Defendants have unlawfully withheld. In support of this Motion, Spin submits the accompanying Memorandum of Points and Authorities, Declaration of Daniel Maris, Owner and President of Spin, and Exhibits to Mr. Maris's Declaration. Spin is concurrently moving to file Exhibits 1 through 21, 24, and 26 to the Declaration under seal.

In accordance with Local Civil Rule 7(m), undersigned counsel conferred with Dedra S. Curteman, Assistant United States Attorney at the United States Attorney's Office for the District of Columbia, regarding this Motion. The government opposes the Motion. A proposed order is attached.

Dated:  September 15, 2021

Respectfully submitted,

*/s/* Caroline L. Wolverton

Angela B. Styles
D.C. Bar No. 448397
Caroline L. Wolverton
D.C. Bar No. 496433
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4000

*Counsel for Plaintiff Kaos Productions, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 15th day of September 2021, true and genuine copies of the foregoing Plaintiff's Motion for Preliminary Injunction, Memorandum of Points and Authorities in Support, Declaration of Daniel Maris, and Proposed Order were sent to counsel for Defendants via electronic mail as follows:

Dedra S. Curteman, dedra.curteman@usdoj.gov

*/s/* Caroline L. Wolverton

Caroline L. Wolverton
D.C. Bar No. 496433
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4000

*Counsel for Plaintiff Kaos Productions, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KAOS PRODUCTIONS, INC.,
d/b/a Spin Nightclub,

               Plaintiff,

      v.                                    Civil Action No. 21-cv-2324-TNM

SMALL BUSINESS ADMINISTRATION, and        Judge Trevor N. McFadden
ISABELLA CASILLAS GUZMAN,
Administrator, Small Business Administration,

               Defendants.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION FOR PRELIMINARY INJUNCTION**

Angela B. Styles
D.C. Bar No. 448397
Caroline L. Wolverton
D.C. Bar No. 496433
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4000

Dated:  September 15, 2021        *Counsel for Plaintiff Kaos Productions, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................................1

BACKGROUND ...............................................................................................................................2

          A.     Shuttered Venue Operators Grant Program.......................................................2

          B.     Spin's SVOG Application and the SBA's Denial.................................................4

ARGUMENT.....................................................................................................................................7

I.      Legal Standard .....................................................................................................................7

II.     Spin Is Likely to Succeed on the Merits ..............................................................................7

          A.     The SBA's Denial of Spin's Requested SVOG Award is Arbitrary and
                  Capricious .............................................................................................................7

                1.     The SBA Failed to Give Any Reason for the Denial ................................8

                2.     The SBA's Decision Conflicts with the Evidence Before the
                      Agency ....................................................................................................9

                3.     The SBA Treated Spin Disparately from Its Similarly Situated
                      Competitors...........................................................................................11

          B.     The SBA's Denial is Contrary to Law....................................................................13

           C.     The SBA's Denial is Unsupported by Substantial Evidence ................................13

III.    Spin's Harms From Denial of a SVOG Award Will Likely Be Irreparable Absent
      Injunctive Relief.................................................................................................................14

IV.    The Balance of Equities and Public Interest Support a Preliminary Injunction ................17

V.     The Court Should Exercise Its Discretion to Waive Rule 65's Security
      Requirement .......................................................................................................................17

CONCLUSION................................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*,
No. 20-CV-3377 (DLF), 2021 WL 1946376 (D.D.C. May 14, 2021) ......................................7

∗ *Amerijet Int'l, Inc. v. Pistole*,
753 F.3d 1343 (D.C. Cir. 2014) ...............................................................................................8

∗ *ANR Storage Co. v. Fed. Energy Regulatory Comm'n*,
904 F.3d 1020 (D.C. Cir. 2018) .......................................................................................11, 13

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*,
897 F.3d 314 (D.C. Cir. 2018) .................................................................................................7

*Banks v. Booth*,
459 F. Supp. 3d 143 (D.D.C. 2020) ..........................................................................................7

*Camelot Banquet Rooms, Inc. v. SBA*,
458 F. Supp. 3d 1044 (E.D. Wis. 2020) .................................................................................16

*Cigar Ass'n of Am. v. FDA*,
317 F. Supp. 3d 555 (D.D.C. 2018) ..........................................................................................7

*Defy Ventures, Inc. v. SBA*,
469 F. Supp. 3d 459 (D. Md. 2020) ........................................................................................16

*Dickinson v. Zurko*,
527 U.S. 150 (1999) ................................................................................................................13

*DSE, Inc. v. United States*,
169 F.3d 21 (D.C. Cir. 1999) ............................................................................................16, 17

*DV Diamond Club of Flint, LLC v. SBA*,
960 F.3d 743 (6th Cir. 2020) ............................................................................................15, 16

*DV Diamond Club of Flint, LLC v. SBA*,
459 F. Supp. 3d 943 (E.D. Mich. 2020) .................................................................................16

*Encino Motorcars, LLC v. Navarro*,
136 S. Ct. 2117 (2016) ..............................................................................................................8

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
803 F.3d 389 (9th Cir. 2015) ..................................................................................................15

∗   *Kreis v. Sec'y of Air Force*,
     406 F.3d 684 (D.C. Cir. 2005) ..................................................................................11

*League of Women Votes of the U.S. v. Newby*,
     838 F.3d 1 (D.C. Cir. 2016) ......................................................................................9

∗   *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
     463 U.S. 29 (1983) ....................................................................................................9

*NAACP v. Trump*,
     321 F. Supp. 3d 143 (D.D.C. 2018) ..........................................................................7

*Nken v. Holder*,
     556 U.S. 418 (2009) ................................................................................................17

*Pursuing Am.'s Greatness v. FEC*,
     831 F.3d 500 (D.C. Cir. 2016) ................................................................................17

*Sherley v. Sebelius*,
     644 F.3d 388 (D.C. Cir. 2011) ..................................................................................7

*Simms v. District of Columbia*,
     872 F. Supp. 2d 90 (D.D.C. 2012) ..........................................................................17

*Tourus Records, Inc. v. Drug Enf't Admin.,*,
     259 F.3d 731 (D.C. Cir. 2001) ..................................................................................7

*Winter v. Nat. Res. Def. Council, Inc.*,
     555 U.S. 7 (2008) ......................................................................................................7

*Xiaomi Corp. v. Dep't of Def.*,
     No. CV 21-280 (RC), 2021 WL 950144 (D.D.C. Mar. 12, 2021) ....................13, 17

**Statutes and Rules**

5 U.S.C.

     § 555(e) ......................................................................................................................8

15 U.S.C.

     § 9009a ....................................................................................................................13

     § 9009a(a)(1)(A) ........................................................................................................3

     § 9009a(a)(1)(A)(iii) ..................................................................................................4

     § 9009a(a)(3)(A)(i) ....................................................................................................3

§ 9009a(b)(3)(A) ..................................................................................................................3

§ 9009a(c) ...........................................................................................................................2

§ 9009a(d)(1)(A)(i) ..........................................................................................................2, 3

Fed. R. Civ. P. 65(c) .........................................................................................................17

**Other Authorities**

Press Release (No. 21-75), SBA, SBA Opens Supplemental Grant Applications
    for Shuttered Venue Operators Grant Awardees (Aug. 27, 2021)............................................3

Pub. L. No. 116-260 § 324................................................................................................2

Pub. L. No. 117-2 § 5005(a) .............................................................................................2

SBA, *SBA Opens Supplemental Grant Applications for Shuttered Venue
    Operators Grant Awardees* (Aug. 27, 2021), .............................................................3

SBA, Shuttered Operators Grant Appeal Information Session (Aug. 4, 2021) .............................12

SBA, Shuttered Venue Operators Grantees ..........................................................................11, 12

**INTRODUCTION**

Kaos Productions, Inc., d/b/a Spin Nightclub ("Spin" or the "Company"), is a small music venue that hosts live performances by DJs, bands, and individual artists on stage. Spin applied for a Shuttered Venue Operator Grant ("SVOG") award to help the Company recover from the devastating setbacks it suffered as a result of the COVID-19 pandemic. Spin desperately needs SVOG funds to rebuild its business, which is precisely the purpose of the SVOG Program. Spin satisfies all of the eligibility criteria for an award, but the Small Business Administration ("SBA") inexplicably denied Spin's application and appeal.

Spin's likelihood of success in this challenge to the SBA's denial of a SVOG award is abundantly clear. To this day, Spin does not know why the SBA denied its application and appeal. The SBA provided no explanation in the notice of either denial, contrary to fundamental requirements of administrative procedure. The SBA's denial of Spin's award request is invalid as arbitrary and capricious for that reason alone. The SBA's denial is also unsupported by substantial evidence and, because Spin demonstrated eligibility for an award, contrary to the statutory provision governing SVOG awards for qualifying applicants in the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "Act").

Not only has the SBA unlawfully denied Spin much needed SVOG funds, the agency has compounded Spin's injury by making SVOG awards to four of Spin's direct competitors in the San Diego live music venue industry. In so doing, the SBA has afforded these businesses an unfair competitive advantage over Spin in an already competitive industry, further inhibiting Spin's recovery. Because these competitors are similarly situated to Spin, the SBA's disparate treatment of Spin is yet another reason the denial of Spin's SVOG award request is invalid.

While Spin will succeed on the merits of this action, the congressional appropriation for SVOG awards is limited, thereby creating a significant risk that, by the time the SBA's erroneous denial of Spin's request is remedied, all of the appropriated funds will be exhausted. If Spin ultimately cannot receive the SVOG funds to which it is entitled, the severe harms it is now suffering will likely become permanent and irreparable. Spin therefore seeks a preliminary injunction from this Court that will preserve SVOG funds in the amount of Spin's award request as well as the amount of the supplemental SVOG award to which Spin is entitled under the Act.

For these reasons, and because a preliminary injunction would not harm the SBA but rather further Congress's intent for the SVOG Program, preliminary relief is warranted. The Court should grant Spin's motion and issue a preliminary injunction directing the SBA to preserve SVOG funds in the amount of Spin's request ($644,547.11) and in the amount of the supplemental award to which Spin is entitled under the Act ($322,273.56).

## BACKGROUND

### A.    Shuttered Venue Operators Grant Program

The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, signed into law December 27, 2020, appropriated $15 billion for grants to operators of shuttered venues. Pub. L. No. 116-260 § 324. The American Rescue Plan, enacted March 11, 2021, amended the Act by appropriating an additional $1,249,500,000 for SVOG awards. Pub. L. No. 117-2 § 5005(a). SVOG awards may be used for specified business expenses, including payroll, rent and utility payments incurred between March 1, 2020, and December 31, 2021. 15 U.S.C. § 9009a(d)(1)(A)(i). An eligible entity may receive a SVOG award in an amount equal to 45 percent of its gross earned revenue in 2019. 15 U.S.C. § 9009a(c).

Businesses with 2021 first quarter revenues of no more than 30 percent of their 2019 first quarter revenues are also eligible for supplemental grants of 50 percent of the original award

2

amount. 15 U.S.C. § 9009a(b)(3)(A); Press Release (No. 21-75), SBA, *SBA Opens Supplemental Grant Applications for Shuttered Venue Operators Grant Awardees* (Aug. 27, 2021), https://www.sba.gov/article/2021/aug/27/sba-opens-supplemental-grant-applications-shuttered-venue-operators-grant-awardees. Supplemental awards can be used for costs incurred through June 30, 2022. 15 U.S.C. § 9009a(d)(1)(A)(i).

Eligible entities under the Act include live venue operators and promoters, as well as theatrical producers, live performing arts organization operators, museum operators, motion picture theatre operators, and talent representatives. *Id*. § 9009a(a)(1)(A). In addition to falling within an eligible business category, to qualify for a SVOG award, a business must meet general eligibility criteria including, *inter alia*, that the business was fully operational on February 29, 2020, suffered at least a 25 percent reduction of gross earned revenue during at least one quarter of 2020 as compared to the same quarter in 2019, and has reopened or intends to reopen. *Id*.

The Act defines live venue operator to include an entity that as a principal business activity organizes, promotes, produces or hosts live concerts or "events by performing artists" for which there is a ticketed cover charge, performers are paid in an amount set by sales or agreement, and not less than 70 percent of revenue is generated through ticket sales or event beverages, food or merchandise. 15 U.S.C. § 9009a(a)(3)(A)(i). The Act specifies that for a live venue operator (as well as a live venue promoter, theatrical producer, or live performing arts organization operator) to be eligible, it must have additional characteristics. The applicant must: (1) put on events with defined performance and audience spaces; (2) use mixing equipment, a public address system and a lighting rig; (3) engage one or more individuals to carry out at least two of the following roles—sound engineer, booker, promoter, stage manager, security personnel, box office manager; (4) sell tickets or impose a cover charge for most performances; (5) fairly pay artists; and (6) market its

events including through print or electronic publications, websites, mass email or social media. *Id*. § 9009a(a)(1)(A)(iii).

### B.　　Spin′s SVOG Application and the SBA′s Denial

On April 26, 2021, Spin applied for a SVOG award of $644,547.11. Decl. of Spin Owner & President D. Maris ("Maris Decl.") ¶ 12 (Ex. A hereto). In its application, Spin demonstrated that it satisfied the criteria for eligibility as a live venue operator. *Id.* ¶ 17. Spin demonstrated that its losses in 2020 exceeded the 25 percent statutory threshold by submitting its tax returns for 2019 and 2020. *Id.* ¶ 13. Spin also submitted, among other things, its venue floorplans and equipment photographs, venue rent checks, sample contracts with performance artists and promoters providing for fair payment by market rate, receipts for marketing campaigns, screenshots of and web links to online marketing materials, and records reflecting that admission was by paid tickets and cover charges. *Id.* ¶ 13. Spin additionally provided the certifications of eligibility required by the SBA's guidance on SVOG applications. *Id.* ¶ 13.

On June 22, 2021, Spin learned from the SBA's SVOG portal that its application was denied. *Id.* ¶ 14. The portal's denial notice gave no explanation of why the SBA found Spin ineligible. *Id.* The portal simply said: "Based on the information provided, your organization does not meet the definition of an eligible entity under the statute. Please visit www.sba.gov to find other programs that may be able to assist you." *Id.* ¶ 14 & Ex. 26 to Maris Decl.

On August 12, 2021, Spin submitted an administrative appeal of the denial to the SBA. Maris Decl. ¶ 15. Because the denial included no explanation, Spin's appeal elaborated on why the Company satisfies all of the criteria for eligibility as a live venue operator. *Id.* Spin organized the appeal according to the SVOG Eligibility Matrix the SBA had published in July 2021, and explained in detail and with supporting documentation how Spin meets each of the general

4

eligibility requirements for a SVOG award and each of the specific eligibility requirements for live venue operators. *Id.* ¶ 17 & Ex. 1 to Maris Decl. Spin's documentation in support of the appeal included: quarterly income statements for 2019, 2020, and the first half of 2021; 2019 and 2020 tax returns; advertising receipts; contracts with live performing artists; box office records reflecting cover charges and ticket sales; employee records and contractor agreements reflecting engagement of a sound engineer, stage manager, box office manager, and security personnel, bookers and promoters; photographs, floorplans, and purchase orders demonstrating its defined performance space, defined audience space, sound mixing equipment, public address system, and lighting rig; payroll and other records reflecting its periods of operation; copies of contracts with promoters that provide for fair payment of performing artists; web links to marketing materials; and other documentation. Maris Decl. ¶ 18 & Exs. 2–21 to Maris Decl. Spin also submitted a letter from its attorney explaining how these documents satisfy SVOG Program requirements for live venue operators, as well as a letter from the San Diego Police Department regarding Spin's special permit to operate solely as a live music venue, and a letter from the Southern California Advocate for the National Independent Venues Association and General Manager of one of Spin's direct local competitors, The Music Box, endorsing Spin's eligibility for a SVOG award as a live venue operator. Maris Decl. ¶ 19 & Ex. 22 to Maris Decl.

On August 22, 2021, the SBA notified Spin that the administrative appeal was denied. Maris Decl. ¶ 22 & Ex. 25 to Maris Decl. As with the denial of Spin's application, the SBA gave no reason for denying the administrative appeal. Maris Decl. ¶ 23 & Ex. 25 to Maris Decl. The SBA's appeal denial notification stated in its entirety: "Your appeal of your SVOG application decision is denied based on the additional and/or updated information you provided." Maris Decl.

¶ 23 & Ex. 25 to Maris Decl.  The SBA's denial of Spin's appeal is the agency's final decision on Spin's SVOG award request.

On September 1, 2021, Spin filed this action for judicial review of the denial of its request for a SVOG award.  As explained below and in the attached Declaration of Spin's owner and president, Daniel Maris, absent a preliminary injunction, Spin will likely suffer irreparable harm in the form of the permanently impaired ability to recover from the severe setbacks the Company has suffered due to the COVID-19 pandemic, as well as the continuation of its unfair competitive disadvantage resulting from the SBA's SVOG awards to Spin's competitors.

**ARGUMENT**

## I.    Legal Standard

Courts analyze a motion for preliminary injunction using four well-established factors: whether (1) the plaintiff is "likely to succeed on the merits," (2) the plaintiff is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [the plaintiff's] favor," and (4) award of interim relief "is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord, e.g.*, *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011).[1] Preliminary relief in the form of a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Banks v. Booth*, 459 F. Supp. 3d 143, 149 (D.D.C. 2020) (quoting *Sebelius*, 644 F.3d at 392), and Spin makes such a showing here.

## II.    Spin Is Likely to Succeed on the Merits

The Complaint asserts three claims against Defendants, and Spin is likely to prevail on all three.

###      A.    The SBA's Denial of Spin's Requested SVOG Award is Arbitrary and Capricious

---

[1] Courts in the D.C. Circuit have "considered these factors on a sliding scale, whereby a strong showing on one factor could make up for a weaker showing on another." *NAACP v. Trump*, 321 F. Supp. 3d 143, 146 (D.D.C. 2018) (internal quotation marks omitted) (quoting *Cigar Ass'n of Am. v. FDA*, 317 F. Supp. 3d 555, 560 (D.D.C. 2018)); *Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, No. 20-CV-3377 (DLF), 2021 WL 1946376, at *1 (D.D.C. May 14, 2021) (under sliding scale approach, the plaintiff must show at least "a serious legal question on the merits") (quoting *NAACP*, 321 F. Supp. 3d at 146); *see also Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (reserving question of "whether the 'sliding scale' approach remains valid after *Winter*") (quoting *League of Women Votes of the U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016)). Because all four factors weigh in Spin's favor of a preliminary injunction, it is unnecessary for this Court to apply a sliding scale.

7

The SBA's decision to deny Spin's request for a SVOG award is arbitrary and capricious for three separate reasons, each of which independently demonstrates Spin's likelihood of success on the merits.

### 1.    The SBA Failed to Give Any Reason for the Denial

A "fundamental requirement" and "basic principle" of administrative law is that "an agency set forth its reasons for decision." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (quoting *Tourus Records, Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001)); *see also Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) ("One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions."). The APA mandates this, requiring that an agency decision to deny an application or other request "shall be accompanied by a brief statement of the grounds for denial." 5 U.S.C. § 555(e) ("Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial."); *Amerijet*, 753 F.3d at 1350. An agency's failure to provide a clear explanation of a decision renders the decision arbitrary and capricious. *E.g.*, *Amerijet*, 753 F.3d at 1350.

Blatantly ignoring this fundamental tenet of law, the SBA did not provide a single reason for denying Spin's request for a SVOG award. Indeed, neither the SBA's denial of Spin's application nor the denial of Spin's appeal included any explanation at all. With respect to Spin's initial application, the SBA portal merely stated: "Based on the information provided, your organization does not meet the definition of an eligible entity under the statute." Maris Decl. ¶ 14 & Ex. 26 to Maris Decl. Likewise, the SBA's email notification denying Spin's administrative

8

appeal provided only the bald statement "Your appeal of your SVOG application decision is denied based on the additional and/or updated information you provided."  Maris Decl. ¶ 23 & Ex. 25 to Maris Decl.  Neither of these denials shed a ray of light on SBA's rationale.

The SBA's decision is plainly arbitrary and capricious for failure to include any explanation.  For that reason alone, Spin has demonstrated a likelihood of success on the merits.

### 2.    The SBA's Decision Conflicts with the Evidence Before the Agency

An agency decision is arbitrary and capricious when it "runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

Spin's submissions to the SBA in support of its request for a SVOG award demonstrated that Spin satisfies all of the criteria for eligibility.  Consistent with the SBA's instructions, Spin organized its appeal statement and evidence according to the SVOG Eligibility Matrix and addressed each criterion separately, explaining how Spin satisfied each criteria and identifying the specific evidence supplied to support the criteria. *See* Exs. 2–21 to Maris Decl.  Because the SBA's denial of Spin's application gave no explanation of why the agency deemed Spin ineligible, Spin's appeal statement covered all of the general eligibility criteria and all of the specific criteria for eligibility as a live venue promoter.  Maris Decl. ¶ 15.

Spin also submitted a letter from its counsel that elaborated on the areas where the SBA may have misconstrued Spin's application. *Id.* ¶ 21.  Of course, Spin could only speculate as to SBA's reasoning for the denial, as the agency failed to provide any justification.  The letter from legal counsel explained, with reference to supporting documentation, that Spin meets the Act's definition of live venue operator because Spin: (1) resumed its operations on July 2, 2021; (2) operates exclusively as a live music venue operator by hosting live concerts and performances by

9

performing artists; (3) meets the Act's requirements of admission by cover charge or ticket with at least 70 percent of its revenue deriving from the sale of event beverages at its live music events; and (4) pays performing artists. *Id.* & Ex. 24 to Maris Decl. In addition, the letter from legal counsel explained how Spin meets the several additional eligibility requirements for live venue operators, including, *inter alia*, that Spin: (1) currently employs a sound engineer, a booking manager and promoter, a stage and lighting manager/sound engineer, security personnel (including a security manager), and a box office manager; (2) has a defined performance and audience space; and (3) has sound mixing equipment, a public address system and lighting rig. Ex. 24 to Maris Decl. Moreover, Spin works with live venue promoters for several of its events, many of which received SVOG grants, and many of which would have been ineligible for SVOG awards had Spin not provided its qualifying venue for the promoters to organize live music events. Maris Decl. ¶ 14.

Spin submitted a letter from the San Diego Police Department stating that, as a live entertainment venue, Spin is required to maintain a "Police Regulated Live-Entertainment Permit[,]" which "allows [Spin] to specifically provide a performance space for live entertainment." Maris Decl. ¶ 20 & Ex. 23 to Maris Decl. The letter also clarified that Spin "solely operates on Fridays and Saturdays and provides Live-Entertainment during those days of operation." Maris Decl. ¶ 20 & Ex. 23 to Maris Decl.

Finally, Spin submitted a letter from the Southern California Advocate for the National Independent Venues Association and General Manager of one of Spin's direct local competitors, The Music Box, endorsing Spin's eligibility for a SVOG award as a live venue operator. Maris Decl. ¶ 19 & Ex. 22 to Maris Decl.

The evidence Spin submitted to the SBA plainly demonstrated that Spin meets all of the eligibility criteria that the Act specifies for award of SVOG funds. The SBA's denial conflicts with the evidence before the agency and, for this additional reason, is arbitrary and capricious.

### 3.    The SBA Treated Spin Disparately from Its Similarly Situated Competitors

"It is axiomatic that an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so." *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005). Disparate treatment of similarly situated entities without justification is arbitrary and capricious. *Id.* Such disparate treatment is particularly egregious where the similar entities are competitors of the disparately treated entity. *See ANR Storage Co. v. Fed. Energy Regulatory Comm'n*, 904 F.3d 1020, 1026 (D.C. Cir. 2018).

The SBA awarded SVOG funds to at least four live venues in San Diego that are Spin's direct competitors in the live music venue industry. Maris Decl. ¶ 27. The SBA's online list of SVOG award recipients includes (1) Bar Dynamite, Inc., d/b/a The Office, (2) Lynn A Paul, d/b/a Soma Productions, (3) Music Box San Diego, LLC, and (4) Quartyard, LLC, all of which are live music venues in San Diego. SBA, Shuttered Venue Operators Grantees, https://data.sba.gov/dataset/svog (last updated Sept. 13, 2021, 3:44 PM). These businesses host live performances by DJs and musicians, just like Spin. *See, e.g.*, *About*, The Office Bar, https://www.theofficebarsd.com/about (last visited Sept. 2, 2021) ("Nightly entertainment starts at 9pm with D[J]s and live music."); *Upcoming Events*, Soma San Diego, https://www.somasandiego.com/ (last visited Sept. 2, 2021) (advertising upcoming live performances by bands and individual artists); *About*, Music Box, https://musicboxsd.com/about/ (last visited Sept. 2, 2021) (video showing performances by bands and advertisements for upcoming performances by DJs); Quartyard, LLC Promotion Photographs (*Justin Campbell*

*Presents: Cloud 10 w/ Dink! & Kid Wonder*, QUARTYARD, https://quartyardsd.com/event/justin-campbell-presents-cloud-10-w-dnk-kid-wonde/ (June 26, 2021)) (photographs of performance by DJ).  The SBA's denial notification gave no reason to justify the disparity.[2]

In addition, at least seven live venue promoters that use Spin's venue have received SVOG awards: (1) CRSSD MUSIC LLC; (2) Happy Dark Productions, Inc.; (3) Night Access LLC; (4) West Coast Weekender LLC; (5) City Hearts LLC; (6) Desert Hearts LLC; and (7) DO LAB, INC.  SBA, Shuttered Venue Operators Grantees, https://data.sba.gov/dataset/svog (last updated Sept. 13, 2021, 3:44 PM).  In fact, CRSSD MUSIC LLC uses Spin as its main venue.  Maris Decl. ¶ 28.

That the federal government would use its vast resources and power for pandemic recovery to favor certain entities in San Diego, but deny other eligible entities, is beyond explanation.  SBA

---

[2] Remarkably, the SBA actively discouraged denied SVOG applicants from even referencing in appeals that similarly situated businesses had received awards.  During a webinar on SVOG appeals, the SBA told applicants "it will not be helpful in this [appeal justification] statement to refer to other SVOG applicants you feel are similar to your own business" and that "if you feel that there are other SVOG applicants which are similar to your own business but which may have had a different outcome on their initial SVOG applications than you did, it will not be helpful to reference that."  SBA, Shuttered Operators Grant Appeal Information Session, at 19:55–20:10 (Aug. 4, 2021).  The recorded webinar is available on Microsoft Teams at https://urldefense.proofpoint.com/v2/url?u=https-3A__gcc02.safelinks.protection.outlook.com_ap_t-2D59584e83_-3Furl-3Dhttps-253A-252F-252Fteams.microsoft.com-252Fl-252Fmeetup-2Djoin-252F19-25253ameeting-5FYWJiYmU3OTItMTRlZC00NzRhLWExNDAtZTU4OTcxMDI3ZGVm-252540thread.v2-252F0-253Fcontext-253D-25257b-252522Tid-252522-25253a-2525223c89fd8a-2D7f68-2D4667-2Daa15-2D41ebf2208961-252522-25252c-252522Oid-252522-25253a-252522fb2d2af5-2D02f5-2D4dbb-2Db8ba-2D7d22d256b8f6-252522-25252c-252522IsBroadcastMeeting-252522-25253atrue-25257d-2526btype-253Da-2526role-253Da-26data-3D04-257C01-257CStephanie.King-2540sba.gov-257C0c9e494913fa405b03c108d955c189a0-257C3c89fd8a7f684667aa1541ebf2208961-257C1-257C0-257C637635111983717294-257CUnknown-257CTWFpbGZsb3d8eyJWIjoiMC4wLjAwMDAiLCJQIjoiV2luMzIiLCJBTiI6Ik1haWwiLCJXVCI6Mn0-253D-257C1000-26sdata-3DmXbGma9yXyb6raybeOVgs7iJF2AKkohN9Rwop-252BfTCYA-253D-26reserved-3D0&d=DwMFAg&c=YOHA32qHoO0MIaoXxJhqDw&r=W-twT8t6E966iXdH08aZVWA5fvWZkXBTVWaO1_kzXMI&m=pBVgMi7i0A5hTYrgve3LduuUNFoCbbFGzWU7h5ATD8I&s=jjGNeEIdjAoo0ZYq7fESDabPWAUhe5DyXR1jEyAyduY&e=.

miserably failed its duty under the APA "to provide some reasonable justification for any adverse treatment relative to similarly situated competitors." *ANR Storage Co.*, 904 F.3d at 1025. Further, SBA's blatant attempt to discourage applicants from raising legitimate legal arguments regarding disparate treatment is starkly manipulative for a trusted agency charged with pandemic relief. The SBA's denial of Spin's SVOG award request amounts to a particularly egregious instance of arbitrary and capricious agency action, further elevating Spin's likelihood of success.

**B.      The SBA's Denial is Contrary to Law**

The Act provides for SVOG awards to be made to applicants that meet the statutory definition of live venue operator and satisfy the Act's general eligibility criteria.  15 U.S.C. § 9009a.  As set forth in Spin's application and appeal, and as summarized above, Spin is a live venue operator as defined by the Act and satisfies each of the statute's general eligibility criteria. Consequently, the SBA's denial of Spin's request for a SVOG award violates the Act and is contrary to law.

**C.      The SBA's Denial is Unsupported by Substantial Evidence**

The APA requires a factual conclusion such as eligibility for a SVOG award to be supported by substantial evidence. *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999) (recognizing that courts review an agency's record-based factual conclusion "to determine whether it is supported by 'substantial evidence'"); *Xiaomi Corp. v. Dep't of Def.*, No. CV 21-280 (RC), 2021 WL 950144, at *7 (D.D.C. Mar. 12, 2021) (same).

The SBA's decisions denying Spin's application and appeal identify zero evidence supporting a conclusion that Spin possesses any of the characteristics that render a business ineligible for a SVOG award or any other basis for concluding that Spin is ineligible. *See* Ex. 25 to Maris Decl. And, as described above, Spin demonstrated its eligibility to the SBA. Accordingly,

13

the SBA's denial of Spin's SVOG award request is not supported by substantial evidence and is invalid under the APA for that reason as well.

**III.     Spin's Harms From Denial of a SVOG Award Will Likely Be Irreparable Absent Injunctive Relief**

Spin is already suffering severe financial harm because the SBA has denied the SVOG funds that it desperately needs and to which Spin is plainly entitled.  Once the SBA expends the funds appropriated for SVOG awards through awards made to other applicants, no funds will be available for Spin if an award is ultimately granted—as it should be—unless funds in the amount to which Spin is entitled are preserved.  If the funds are not preserved and are exhausted before Spin's claims are resolved, the harms Spin is now experiencing—described in Mr. Maris's Declaration and below—will be permanent and irreparable.

**Impeded Recovery from the COVID-19 Pandemic.**  The COVID-19 pandemic has had a devastating impact on Spin.  Maris Decl. ¶ 8.  Spin had its best year in 2019 ever since it first opened in 2006.  *Id.* ¶ 7.  Capitalizing on that success, Spin booked live events for every weekend in 2020 before the year even began.  *Id.*  However, when the pandemic hit in March 2020, Spin was forced to close down entirely, lay off all of its employees, and lost over 80 percent of its revenue in 2020 as compared to 2019.  *Id.* ¶ 9.  The only revenue generated in 2020 occurred between January and March, prior to the pandemic; Spin's revenue from April to December 2020 was down 100 percent from that same period in 2019.  *Id.*  Spin did not resume operations until July 2, 2021.  *Id.* ¶ 11.  During the first two quarters of 2021, Spin suffered a 100 percent loss in revenue as compared to the first half of 2019.  *Id.* ¶ 9.

Spin incurred significant debt—at least $500,000—during the pandemic as well.  For example, Spin owes more than $200,000 to its landlord for the rental of its premises alone.  *Id.* ¶ 25.  Spin's owner also loaned the Company approximately $100,000 to cover continuing expenses

such as insurance and utilities, as well as payments to vendors and for supplies and operational and logistical needs to reopen the venue. *Id.*

Spin needs a SVOG award to recover from the major setbacks the Company has experienced from the pandemic, which is precisely the need that Congress created the SVOG Program to address. Without an award, Spin will not be able to (1) rehire all of the laid off employees, (2) host as many performances as before the pandemic, (3) host performances on the same scale as before the pandemic, or (4) market shows as effectively as before the pandemic, at least for the foreseeable future. *Id.* ¶ 29.

**Competitive Disadvantage.** By making awards to Spin's competitors—the four similarly situated live music venues in San Diego—the SBA has placed Spin at a competitive disadvantage relative to businesses with which Spin competes, and thereby exacerbated Spin's injury. *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 411 (9th Cir. 2015) ("A rule putting plaintiffs at a competitive disadvantage constitutes irreparable harm."). While The Office, Soma Productions, Music Box, and Quartyard are able to use SVOG funds to compete with Spin, Maris Decl. ¶ 27, the SBA has denied Spin access to those funds and thus placed it on an uneven playing field vis-à-vis these competitors.

\* \* \*

The Sixth Circuit recently recognized the propriety of preliminary relief to preserve pandemic-related recovery funds under circumstances similar to those here. In *DV Diamond Club of Flint, LLC v. SBA*, a challenge to an SBA rule restricting eligibility for Paycheck Protection Program ("PPP") loans, the lower court awarded a preliminary injunction to guard against the risk that the limited appropriations would be exhausted before the plaintiffs' challenge was resolved, and the Sixth Circuit denied the SBA's motion to stay the injunction. 960 F.3d 743, 747 (6th Cir.

15

2020).  *See also Defy Ventures, Inc. v. SBA*, 469 F. Supp. 3d 459, 479 (D. Md. 2020) (granting preliminary injunction to extend PPP application deadline for plaintiffs "at risk of losing a benefit for which they are eligible because of arbitrary and capricious agency action"); *Camelot Banquet Rooms, Inc. v. SBA*, 458 F. Supp. 3d 1044, 1049 (E.D. Wis. 2020) (noting that the court had granted a temporary restraining order requiring the SBA to set aside enough reserve authority to guarantee PPP loans).  As the lower court recognized in *DV Diamond Club of Flint*, sovereign immunity likely precludes a claim for monetary damages against the SBA.  *DV Diamond Club of Flint, LLC v. SBA*, 459 F. Supp. 3d 943, 962–63 (E.D. Mich. 2020), *stay denied*, 960 F.3d 743 (6th Cir. 2020).

Similarly, here, absent preliminary relief, the limited appropriation of SVOG funds may be exhausted by the time Spin's claims are resolved.  While the SBA's website indicates that a large number of funds are still available, there is no basis for believing that they will be available at the end of this litigation. SBA, Shuttered Venue Operators Grant Public Report (Sept. 7, 2021), https://www.sba.gov/sites/default/files/2021-09/SVOG%20Public%20Report%20-%20Midday%20Sept%207%202021-508.pdf.  Should the funds be exhausted before resolution of Spin's claims, Spin would be left unable to obtain the relief funds to which it is entitled, and with a permanently impaired ability to build back its business and an entrenched competitive disadvantage relative to its competitors that received SVOG awards.

## IV.   The Balance of Equities and Public Interest Support a Preliminary Injunction

When preliminary relief is sought against a federal agency, harm to the opposing party and the public interest merge into a single inquiry. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *accord, e.g.*, *Xiaomi*, 2021 WL 950144, at *12. ʺ[T]he [governmentʹs] harm and the public interest are one and the same, because the governmentʹs interest *is* the public interest.ʺ *Pursuing Am.ʹs Greatness v. FEC,* 831 F.3d 500, 511 (D.C. Cir. 2016) (citing *Nken*, 556 U.S. at 435). Thus, the Court balances the harm to the movant absent preliminary relief against the impact of injunctive relief on the government and the public interest. *Id*.

Here, Spin is suffering severe economic and competitive harms. By contrast, preserving SVOG funds so that they will be available in the (likely) event that Spin ultimately prevails will not harm the government. Instead, an interim order preserving the funds will further the SVOG Program's purpose of helping small businesses like Spin get back on their feet.

## V.   The Court Should Exercise Its Discretion to Waive Rule 65's Security Requirement

Finally, the Court should waive the security requirement of Rule 65. The rule provides for security "in an amount that that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, the Court has discretion to waive that requirement. *E.g.*, *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 107 (D.D.C. 2012) ("Courts in this Circuit have found the Rule 'vest[s] broad discretion in the district court to determine the appropriate amount of an injunction bond,' including the discretion to require no bond at all.") (quoting *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999)).

An order that Defendants preserve sufficient funds for a SVOG award and supplemental award, as Spin requests, will not require Defendants to incur any costs or suffer any damages. In

the unlikely event that Spin does not prevail, Defendants can simply return the amounts to the general SVOG fund.  Accordingly, Rule 65's purpose would not be served by imposition of a bond or other security requirement, and it would be appropriate for the Court to exercise its discretion to waive the requirement.

**CONCLUSION**

Spin respectfully urges this Court to grant this motion and to issue as soon as possible a preliminary injunction directing Defendants to preserve SVOG funds in the award amount that Spin requested—$644,547.11—and supplemental award amount of $322,273.56.

Dated:  September 15, 2021                     Respectfully submitted,

_/s/_ Caroline L. Wolverton

Angela B. Styles
D.C. Bar No. 448397
Caroline L. Wolverton
D.C. Bar No. 496433
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4000

*Counsel for Plaintiff Kaos Productions, Inc.*

18
